IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE MARTIN, H-90626, | ) | |
| | ) | |
| Plaintiff(s), | ) | No. C 12-3193 CRB (PR) |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| A. HEDGPETH, Warden, et al., | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant(s). | ) | (Dkt. #99 & 121) |
| _____ | ) | |

Plaintiff, a prisoner at Salinas Valley State Prison (SVSP), filed a pro se First Amended Complaint (FAC) for damages under 42 U.S.C. § 1983 and 28 U.S.C. § 1367 alleging a host of medical grievances against medical personnel at SVSP. Per order filed on June 13, 2013, the court found that, liberally construed, plaintiff's allegations appear to state a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs under § 1983 and a cognizable California state law claim for medical negligence pursuant to the court's supplemental jurisdiction under § 1367 against various SVSP defendants, and ordered the U.S. Marshal to serve them.

Defendants moved to dismiss some of plaintiff's alleged medical grievances under Federal Rule of Civil Procedure 12(b)(6) on the grounds that they fail to state a claim for deliberate indifference to serious medical needs under § 1983 and that defendants are entitled to qualified immunity. Defendants also argued that plaintiff's state law medical negligence claim must be dismissed

as to all alleged medical grievances for failure to comply with the California Tort Claims Act.  Defendants moved for summary judgment under Rule 56 on plaintiff's remaining medical grievances on the ground that plaintiff failed to properly exhaust available administrative remedies as required by the Prison Litigation Reform Act (PLRA).

Per order filed on August 7, 2014, the court granted defendants' motion to dismiss and motion for summary judgment for non-exhaustion as to all claims other than plaintiff's § 1983 deliberate indifference to serious medical needs claim based on denial of adequate hypertension medication, denial of pain medication on December 29, 2011 and denial of effective eye wear.  The court made clear that this action "will proceed as to plaintiff's § 1983 deliberate indifference to serious medical needs claim based on the [aforementioned] three medical grievances . . . only."  Aug. 7, 2014 Order (dkt. #91) at 19-20.

Defendants move for summary judgment on the three remaining § 1983 medical grievances on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law.  Defendants also claim that they are entitled to qualified immunity.  Plaintiff has filed an opposition and defendants have filed a reply.

## BACKGROUND

The remaining allegations in plaintiff's FAC pertain to his medical grievances of denial of adequate hypertension medication, denial of pain medication on December 29, 2011 and denial of effective eye wear.  They can be summarized as follows:

1.   Denial of Adequate Hypertension Medication

Plaintiff alleges that Dr. Mack was deliberately indifferent to his serious medical needs because Dr. Mack prescribed inadequate medications to

treat his hypertension.  Plaintiff specifically alleges that Dr. Mack refused to provide him a previously recommended Clonidine prescription in patch form for hypertension and instead provided him the medication in pill form that he cannot take due to "severe adverse reactions" and "side-effects."  FAC (dkt. #18) at 3.

### 2.   Denial of Pain Medication on December 29, 2011

Plaintiff alleges that Dr. Mack cancelled his morning pain medication on December 29, 2011.  Id. at 5.

### 3.   Denial of Effective Eye Wear

Plaintiff alleges that he has been denied "effective eye wear" since 2009 and, as a result, his vision has drastically worsened.  Id.  Plaintiff specifically alleges that in 2010 doctors Sepulveda and Bright cancelled a chrono for "ADA" glasses and, in 2011, Dr. Kumar denied a chrono for "ADA tinted glasses."  Id. at 4.

## DISCUSSION

### A.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden

3

of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c).  A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party.  Anderson, 477 U.S. at 249.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex, 477 U.S. at 323.

B.      Analysis

Defendants argue that they are entitled to summary judgment and qualified immunity from plaintiff's three remaining § 1983 medical grievances.  Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment.  The court first faces "this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  533 U.S. at 201.  If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly

4

established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02.  Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted.  Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[1]

A prison official violates the Eighth Amendment's proscription against cruel and unusual punishment when he acts with deliberate indifference to the serious medical needs of a prisoner.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).  To meet the objective standard, the denial of a plaintiff's serious medical need must result in the "'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  To meet the subjective standard of deliberate indifference, a prison official must know that a prisoner faces a substantial risk of serious harm and disregard that risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837.

Negligence cannot establish liability under the Eighth Amendment.   Id. at 835-36 n.4.  An "official's failure to alleviate a significant risk that he should

_____

[1]Although the Saucier sequence is often appropriate and beneficial, it is not mandatory.  A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  See Pearson v. Callahan,  555 U.S. 223, 236 (2009).

have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment." Id. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). Prison officials violate their constitutional obligation only by "intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104-05.

A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). To prevail on a claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment the doctor-defendants chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Id.

        1.      Denial of Adequate Hypertension Medication

Defendants argue that Dr. Mack is entitled to summary judgment on plaintiff's § 1983 claim of denial of adequate hypertension medication because the evidence in the record shows that Dr. Mack and other prison doctors adequately treated plaintiff for hypertension and did not consciously disregard plaintiff's hypertension. In support, defendants submit declarations and documentary evidence showing that Dr. Mack and other prison doctors have prescribed plaintiff various hypertension medications, including "preferred" first-line hypertension medications such as calcium channel blockers, ACE inhibitors and diuretics. When plaintiff takes them as prescribed, his hypertension can be controlled. But plaintiff often refuses to take prescribed hypertension medication

other than a previously recommended Clonidine prescription in patch form.
There is no medical evidence that plaintiff would suffer from adverse reactions or
side effects to any of the first-line hypertension medications Dr. Mack and other
prison doctors have prescribed (or offered to prescribe) him.  Dr. Mack
nonetheless relented and prescribed plaintiff Clonidine in pill form as early as
April 2012.  There is no medical evidence that plaintiff would suffer from
adverse reactions or side effects to Clonidine in pill form rather than patch form.
In fact, plaintiff has been taking Clonidine in pill form for over a year now – 0.2
mg three times a day, administered by a nurse to monitor his compliance – and
his blood pressure has intermittently been under control without any adverse
reactions or side effects.  Dr. J. Dunlap reviewed plaintiff's extensive medical
records and, in his medical opinion, "Dr. Mack's prescribing Clonidine in a pill
form, instead of the previously recommended patch form, was an appropriate
medical alternative to manage [plaintiff's] high blood pressure . . . and did not
pose any substantial risk of harm to [plaintiff]."  Dunlap Decl. (dkt. #100) at 3-4.

On plaintiff's medical record and evidence submitted by defendants, no
reasonable jury could find that Dr. Mack disregarded plaintiff's hypertension by
failing to take reasonable steps to abate it.  See Farmer, 511 U.S. at 837.
Plaintiff's mere insistence that the previously recommended Clonidine in patch
form was the only acceptable course of treatment for his hypertension does not
compel a different conclusion.  There simply is no evidence that the course of
treatment Dr. Mack chose was medically unacceptable under the circumstances
and that Dr. Mack chose this course in conscious disregard of an excessive risk to
plaintiff's health.  See Toguchi, 391 F.3d at 1058.  Defendants are entitled to
summary judgment on plaintiff's § 1983 deliberate indifference claim based on
denial of adequate hypertension medication.  See Celotex, 477 U.S. at 323.

7

At minimum, Dr. Mack is entitled to qualified immunity because a reasonable prison doctor could have believed that his conduct was lawful under the circumstances.  See Saucier, 533 U.S. at 201-02.  A reasonable prison doctor could have believed that prescribing plaintiff first-line hypertension medications and/or Clonidine in pill form, rather than Clonidine in patch form, was medically acceptable and not an excessive risk to plaintiff's health where there was no medical evidence that plaintiff could not tolerate any hypertension medication other than Clonidine in patch form.

2.    Denial of Pain Medication on December 29, 2011

Defendants argue that Dr. Mack is entitled to summary judgment on plaintiff's § 1983 claim of denial of pain medication on December 29, 2011 because the evidence in the record shows that Dr. Mack did not deny plaintiff pain medication on December 29, 2011, but rather made a reasoned decision to change plaintiff's pain medication prescription from morphine to methadone.  In support, defendants submit declarations and documentary evidence showing that on December 29, 2011, plaintiff was receiving morphine extended release (ER) three times a day (30 mg in am, 60 mg at noon and 60 mg at bedtime) for chronic neck and lower back pain.  But Dr. Mack elected to change plaintiff's morphine ER prescription to methadone 20 mg twice a day at noon and at bedtime because plaintiff was constantly seeking pain medications and was known to be at high risk of "diverting" his morphine ER tablets, i.e., selling the tablets in the prison black market.  Methadone is an opiate pain reliever equivalent to morphine, but unlike the morphine ER tablets plaintiff was receiving, methadone can be crushed into a powder form and mixed with a liquid thereby reducing the risk of diversion into the prison back market.  In Dr. Dunlap's medical opinion, "Dr. Mack's December 29, 2011 decision to change [plaintiff's] pain medication to methadone

was a reasonable and appropriate medical decision under the circumstances that were present at the time" and "did not pose a substantial risk of harm" to plaintiff.  Dunlap Decl. at 5.

On plaintiff's medical record and evidence submitted by defendants, no reasonable jury could find that Dr. Mack disregarded plaintiff's chronic neck and lower back pain by failing to take reasonable steps to abate it.  See Farmer, 511 U.S. at 837.  Plaintiff's assertion that Dr. Mack cancelled his morning pain medication on December 29, 2011 does not compel a different conclusion.  At most it suggests that plaintiff disagrees with Dr. Mack's decision to change his pain prescription from morphine ER three times a day (morning, noon and bedtime) to methadone twice a day (noon and bedtime), but it is well established that "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Nor is there any evidence in the record that the change in pain medication Dr. Mack chose was medically unacceptable under the circumstances and that Dr. Mack chose this change in pain medication in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058.  Defendants are entitled to summary judgment on plaintiff's § 1983 deliberate indifference claim based on his medical grievance that Dr. Mack cancelled his morning pain medication on December 29, 2011. See Celotex, 477 U.S. at 323.

At minimum, Dr. Mack is entitled to qualified immunity because a reasonable prison doctor could have believed that his conduct was lawful under the circumstances.  See Saucier, 533 U.S. at 201-02.  A reasonable prison doctor could have believed that changing plaintiff's pain medication from morphine ER to methadone in order to decrease the risk of diversion of opiates into the prison

back market was medically acceptable and not an excessive risk to plaintiff's health.  After all, Dr. Dunlap points out under penalty of perjury that the change "was consistent with the California Physician's Health Care Services (CPHCS) Pain Management Guidelines."  Dunlap Decl. at 5.

       3.    Denial of Effective Eye Wear

Defendants argue that doctors Sepulveda, Bright and Kumar are entitled to summary judgment on plaintiff's § 1983 claim of denial of effective eye wear because the evidence in the record shows that they and other prison medical staff repeatedly have offered plaintiff prescription glasses deemed medically necessary (including prescription glasses that are tinted gray II, with transitional lenses) and only denied plaintiff glasses not deemed medically necessary (such as dark tinted glasses and solar shields).  In support, defendants submit declarations and documentary evidence showing the following:

To be considered visually impaired, a prisoner must be enrolled by his primary care physician in the Disability Placement Program (DPP) for visual impairment.  DPP for visual impairment applies to prisoners whose correctable central visual acuity is not better than 20/200 with corrective lenses in at least one eye.  If a prisoner meets the criteria for placement in DPP for visual impairment then glasses prescribed for him would be considered an accommodation for visual impairment.  Plaintiff is not in DPP for visual impairment because his central visual acuity is better than 20/200 with corrective lenses in at least one – his most recent visual acuity was measured on August 27, 2014 as 20/70 in his right eye and 20/400 in his left eye.

Prison doctors repeatedly have recommended prescription glasses for plaintiff to correct his central visual acuity to better than 20/200.  They also have offered plaintiff gray tinted, transition lenses, but plaintiff repeatedly has refused

10

the recommended prescription glasses.  He instead repeatedly has requested dark glasses – either "ADA" dark tinted glasses or solar shields (polarized sunglasses that set over regular prescription glasses).  There are no glasses defined as "ADA" glasses, and neither dark tinted glasses nor solar shields would assist in correcting plaintiff's visual acuity.

Doctors Sepulveda, Bright and Kumar have denied plaintiff's requests for "ADA" dark tinted glasses or solar shields because plaintiff has been offered prescription glasses with gray tinted, transition lenses and there is no evidence that dark tinted glasses or solar shields are medically necessary for plaintiff.  In Dr. Dunlap's medical opinion, the eye wear decisions of doctors Sepulveda, Bright and Kumar "were reasonable and appropriate medical judgments" and "did not adversely affect [plaintiff's] visual acuity."  Dunlap Decl. at 6.  Dr. Dunlap further opines that plaintiff's condition "does not meet the criteria for participation in the [DPP] for visual impairment."  Id.

On plaintiff's medical record and evidence submitted by defendants, no reasonable jury could find that doctors Sepulveda, Bright and Kumar were deliberately indifferent to plaintiff's medical needs for corrective eye wear.  See Farmer, 511 U.S. at 837.  The evidence makes clear that prison doctors offered plaintiff prescription glasses deemed medically necessary and only denied him glasses deemed not medically necessary.  Plaintiff's mere disagreement with prison medical staff as to what type of eye wear is medically necessary to correct his vision is not enough to establish deliberate indifference or even "give rise to a § 1983 claim."  Franklin, 662 F.2d at 1344.  Defendants are entitled to summary judgment on plaintiff's § 1983 deliberate indifference claim based on his medical grievance that doctors Sepulveda, Bright and Kumar denied him effective eye wear.  See Celotex, 477 U.S. at 323.

1    At minimum, doctors Sepulveda, Bright and Kumar are entitled to

2    qualified immunity because a reasonable prison doctor could have believed that

3    his conduct was lawful under the circumstances.  See Saucier, 533 U.S. at 201-

4    02.  A reasonable prison doctor could have believed that denying plaintiff's

5    request for dark tinted glasses or solar shields where neither would assist in

6    correcting plaintiff's visual acuity, and where plaintiff already was offered

7    prescription glasses with gray tinted, transition lenses, was medically acceptable

8    and not an excessive risk to plaintiff's health.

9    **CONCLUSION**

10   For the foregoing reasons, defendants' motion for summary judgment

11   (dkt. #99) is GRANTED.[2]

12   The clerk shall enter judgment in favor of defendants and close the file.[3]

13   SO ORDERED.

14   DATED: May 13, 2015

     CHARLES R. BREYER
15   United States District Judge

16

17

18

19

20

21   G:\PRO-SE\CRB\CR.12\Martin, G.12-3193.msj2.wpd

22

23   [2]Plaintiff's motion (dkt. #121) for an order of contempt against defendants
24   is DENIED as moot and without merit.

25   [3]Plaintiff raises a host of new claims in his opposition papers.  He is free
     to bring the new claims in a new action after exhausting available administrative
26   remedies as to each claim, but the new claims are not a basis for defeating
27   judgment in favor of defendants in this protracted case.

28                                                 12